**Glen SUAREZ, Plaintiff–Appellee,**

v.

**Benjamin WARD, individually and as Police Commissioner, New York City Police Department, Defendant–Appellant.**

**No. 620, Docket 89–7889.**

United States Court of Appeals, Second Circuit.

Argued Jan. 10, 1990.

Decided Feb. 16, 1990.

John Patrick Rudden, New York City, for plaintiff-appellee.

Elizabeth Dvorkin, New York City Asst. Corp. Counsel of the City of New York (Peter L. Zimroth, Corp. Counsel, Francis F. Caputo, Asst. Corp. Counsel of the City

of New York, of counsel), for defendant-appellant.

Before VAN GRAAFEILAND, CARDAMONE and ALTIMARI, Circuit Judges.

ALTIMARI, Circuit Judge:

In this case, we consider the extent to which New York Civil Service Law section 61, N.Y.Civ.Serv.Law § 61 (McKinney Supp.1990), is applicable to promotions made pursuant to the consent decree entered in *Hispanic Society v. New York City Police Department*, 42 Fair Empl. Prac.Cas. (BNA) 905, 40 Empl.Prac.Dec. (CCH) ¶ 36,385 (S.D.N.Y.1986) (the "settlement agreement" or "agreement"). The agreement settled classwide claims of employment discrimination arising from the New York City Police Department's ("NYCPD") use of a challenged examination for purposes of evaluating candidates for promotion. Plaintiff-appellee Glen Suarez, a hispanic police officer and member of the plaintiff class in *Hispanic Society*, was passed over for promotion subsequent to the entry of the settlement agreement. Suarez initiated the present action in the United States District Court for the Southern District of New York (Carter, *J*), contending that the defendant-appellant Commissioner of the New York City Police Department's (the "Commissioner") failure to promote Suarez was in violation of Suarez's rights under the agreement, the Constitution, and various state and federal statutes. The district court agreed with Suarez's contention that under the terms of the agreement, the Commissioner could not rely on section 61 to promote other hispanic officers ahead of Suarez. Thus, without reaching Suarez's statutory or constitutional claims, the district court granted Suarez's motion for summary judgment and directed the Commissioner immediately to promote Suarez to the rank of sergeant. On this appeal, the Commissioner argues that under the express terms of the settlement agreement, section 61 is applicable to all promotions made pursuant to the agreement. We agree. Accordingly, we reverse and remand for further proceedings.

## BACKGROUND

Section 61, popularly known as the "one-of-three rule," provides, in pertinent part, that an "[a]ppointment or promotion from an eligible list to a position in the competitive class shall be made by the selection of one of the three persons certified by the appropriate civil service commission as standing highest on such eligible list." N.Y.Civ.Serv.Law § 61(1). In recognition of the fact that a high examination score does not necessarily demonstrate an ability to perform on the job, section 61 was designed to allow factors other than examination performance to be taken into account in making civil service appointments. *See In re Cassidy*, 37 N.Y.2d 526, 528–29, 375 N.Y.S.2d 300, 302, 337 N.E.2d 752, 754 (1975). Moreover, section 61 reflects a balance between the policy of maintaining merit systems for public employees and the need of administrators to exercise control over the composition of their staffs. *See Koscherak v. Schmeller*, 363 F.Supp. 932, 935 (S.D.N.Y.1973) (three-judge court), *aff'd. mem.*, 415 U.S. 943, 94 S.Ct. 1462, 39 L.Ed.2d 560 (1974). Section 61 furthers the competing policies which underlie it by allowing an administrator to choose from among the top three eligible candidates.

The settlement agreement upon which Suarez's claim is based terminated two actions asserted against the NYCPD by classes of black and hispanic police officers in 1984. *See generally Hispanic Society v. New York City Police Dep't*, 806 F.2d 1147, 1150–52 (2d Cir.1986) (dismissing appeal of order approving settlement agreement). The officers had contended that Civil Service Examination No. 2548, which was administered by the NYCPD to 11,899 candidates for promotion to the rank of sergeant, had a disparate impact upon black and hispanic candidates. The agreement called for the promotion of sufficient numbers of black and hispanic officers who had taken Examination No. 2548 to eliminate the alleged disparate impact.

The settlement agreement dictated the manner in which promotions from Eligible

List No. 2548 were to be made. Paragraph IIIA of the agreement stated that:

The parties to this agreement contemplate that at least 1,000 permanent promotions to the rank of Sergeant will be made from Eligible List No. 2548. Subject to the provisions of Section 56 of the New York Civil Service Law, Eligible List No. 2548, as modified pursuant to the provisions of this agreement, shall be utilized for such promotions.... *All promotions made pursuant to this agreement shall also be subject to the provisions of sections 50 and 61 of the Civil Service Law.*

(emphasis added). The agreement then set forth the promotion objectives specific to the black and hispanic officers. Paragraph IIIB, entitled *"Hispanics,"* provided that:

The New York City defendants shall promote a sufficient number of Hispanic police officers to the rank of Sergeant in each successive class, or group, promoted from Eligible List No. 2548 such that the ratio of the number of Hispanic police officers promoted from the Eligible List to the total number of all police officers promoted to the rank of Sergeant from that List (including promotions that have been made prior to the approval of this agreement by the District Court) corresponds to the percentage of Hispanic police officers who took Examination No. 2548. The parties agree that this percentage is 8.7%. The New York City defendants shall meet this goal by first promoting Hispanics on the Eligible List in rank order in relation to each other. Once these police officers have been promoted, additional Hispanics shall be added to the Eligible List based on their raw scores on the technical knowledge component of Examination No. 2548. These additional Hispanics shall be ranked vis-a-vis each other based on their raw scores on the technical knowledge test—those with the highest score will be promoted first, those with the next highest score will be promoted next, etc.... The process of successively lowering the technical knowledge test score levels shall be repeated until the appropriate number of qualified Hispanic candidates shall have been obtained.

Judge Carter approved the settlement agreement on June 16, 1986.

Subsequently, Suarez was ranked number 81 on the hispanic eligible list but was not chosen for promotion to the rank of sergeant when his number was reached. Thereafter, he initiated the instant action, alleging that other hispanic officers, who ranked lower on Eligible List No. 2548 than Suarez, improperly were promoted ahead of him. The district court found that "in the promotion of Hispanics to the rank of sergeant from the List, defendants agreed to forgo the 'one of three' selection prerogative they normally exercise pursuant to New York Civil Service Law § 61." The court reasoned that "[o]therwise, the [settlement agreement] would be effectively nullified by the continued force of the statute. This cannot have been the intent of the parties, nor was it the intent of the court." (footnote omitted). Accordingly, the district court granted Suarez's motion for summary judgment, and directed that Suarez be promoted immediately.

## DISCUSSION

The Commissioner contends that under the terms of the settlement agreement, section 61 applies to promotions made from Eligible List No. 2548. We agree.

■ As we have previously stated, "[a] consent judgment or decree is 'an agreement of the parties entered upon the record with the sanction and approval of the [c]ourt.' For purposes of enforcement, a consent judgment should be construed and interpreted as a contract." *Schurr v. Austin Galleries of Ill., Inc.,* 719 F.2d 571, 574 (2d Cir.1983) (citations omitted); *see also United States v. ITT Continental Baking Co.,* 420 U.S. 223, 236–37, 95 S.Ct. 926, 934–35, 43 L.Ed.2d 148 (1975); *Canterbury Belts Ltd. v. Lane Walker Rudkin, Ltd.,* 869 F.2d 34, 38 (2d Cir.1989). Thus, if the language of a settlement agreement is unambiguous, its meaning must be discerned within the "four corners" of the

agreement. *See ITT Continental Baking Co.*, 420 U.S. at 236, 95 S.Ct. at 934; *Canterbury Belts*, 869 F.2d at 38. Moreover, the language of one part of the agreement must not be construed so as to render another part of the agreement meaningless. *See Lelsz v. Kavanagh*, 824 F.2d 372, 374 (5th Cir.1987); *Roberts v. St. Regis Paper Co.*, 653 F.2d 166, 171 (5th Cir.1981).

■ The district court's finding that "defendants agreed to forgo the 'one of three' selection prerogative" cannot be supported by the plain language of the agreement. It is hard to imagine a statement which more clearly indicates that the parties intended section 61 to apply than the declaration in paragraph IIIA that "[a]ll promotions made pursuant to this agreement shall also be subject to the provisions of sections 50 and 61 of the Civil Service Law."

We are not convinced by the district court's pronouncement that the settlement agreement would be "effectively nullified by the continued force of the statute." The intent of the parties, as stated in the agreement, was to "promote a sufficient number of Hispanic police officers to the rank of Sergeant." We fail to see how this purpose was frustrated by the promotion of hispanic officers other than Suarez.

Finally, we are unpersuaded by Suarez's contention that the language of paragraph IIIB mandates that he be promoted. Paragraph IIIB described how additional candidates were to be added to the eligible list: "These additional Hispanics shall be ranked vis-a-vis each other based on their raw scores on the technical knowledge test—those with the highest score will be promoted first, those with the next highest score will be promoted next, etc." This language merely describes how the additional candidates were to be ranked on the new list. Were we to adopt Suarez's interpretation, the clear statement that "[a]ll promotions made pursuant to this agreement shall also be subject to the provisions of [section 61]" would be rendered meaningless.

## CONCLUSION

Accordingly, the judgment of the district court granting Suarez's motion for summa-

ry judgment is reversed, and the case is remanded to the district court for further proceedings consistent with this opinion.

*Reversed and remanded.*