**UNITED STATES of America, Plaintiff,**

**v.**

**INTERNATIONAL BROTHERHOOD of TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN and HELPERS of AMERICA, AFL–CIO, the Commission of La Cosa Nostra, Anthony Salerno, a/k/a "Fat Tony," Matthew Ianniello, a/k/a "Matty the Horse," Anthony Provenzano, a/k/a "Tony Pro," Nunzio Provenzano, a/k/a "Nunzi Pro," Anthony Corallo, a/k/a "Tony Ducks," Salvatore Santoro, a/k/a "Tom Mix," Christopher Furnari, Sr., a/k/a "Christie Tick," Frank Manzo, Carmine Persico, a/k/a "Junior," "The Snake," Gennaro Langella, a/k/a "Gerry Lang," Philip Rastelli, a/k/a "Rusty," Nicholas Marangello, a/k/a "Nicky Glasses," Joseph Massino, a/k/a "Joey Messina," Anthony Ficarotta, a/k/a "Figgy," Eugene Boffa, Sr., Francis Sheeran, Milton Rockman, a/k/a "Maishe," John Tronolone, a/k/a "Peanuts," Joseph John Aiuppa, a/k/a "Joey O'Brien," "Joe Doves," "Joey Aiuppa," John Phillip Cerone, a/k/a "Jackie the Lackie," "Jackie Cerone," Joseph Lombardo, a/k/a "Joey the Clown," Angelo Lapietra, a/k/a "The Nutcracker," Frank Balistrieri, a/k/a "Mr. B," Carl Angelo Deluna, a/k/a "Toughy," Carl Civella,**

272

a/k/a "Corky," Anthony Thomas Civella, a/k/a "Tony Ripe," General Executive Board, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Jackie Presser, General President, Weldon Mathis, General Secretary–Treasurer, Joseph Trerotola, a/k/a "Joe T," First Vice President, Robert Holmes, Sr., Second Vice President, William J. McCarthy, Third Vice President, Joseph W. Morgan, Fourth Vice President, Edward M. Lawson, Fifth Vice President, Arnold Weinmeister, Sixth Vice President, John H. Cleveland, Seventh Vice President, Maurice R. Schurr, Eighth Vice President, Donald Peters, Ninth Vice President, Walter J. Shea, Tenth Vice President, Harold Friedman, Eleventh Vice President, Jack D. Cox, Twelfth Vice President, Don L. West, Thirteenth Vice President, Michael J. Riley, Fourteenth Vice President, Theodore Cozza, Fifteenth Vice President, Daniel Ligurotis, Sixteenth Vice President, Salvatore Provenzano, a/k/a "Sammy Pro," Former Vice President, Defendants.

## In re APPLICATION I OF the INDEPENDENT REVIEW BOARD.

### No. 88 Civ. 4486 (DNE).

United States District Court, S.D. New York.

Nov. 2, 1992.

## OPINION & ORDER

EDELSTEIN, District Judge:

This opinion emanates from the voluntary settlement in the action commenced by the plaintiff United States of America (the "Government") against the defendants International Brotherhood of Teamsters (the "IBT") and the IBT's General Executive Board (the "GEB") embodied in the voluntary consent order entered March 14, 1989 (the "Consent Decree"). The goals of the Consent Decree are to maintain the IBT democratically and to rid the IBT of the hideous influence of organized crime. The Consent Decree provides for an Independent Review Board ("IRB"), which consists of three members. The members of the IRB are Frederick B. Lacey, Harold E. Burke, and William H. Webster. Operation of the IRB and its members is governed by Section G of the Consent Decree as well as the Rules and Procedures for Operation of the Independent Review Board of the International Brotherhood of Teamsters (the "Rules"), which were promulgated by this Court on August 19, 1992. The IRB's function is to eradicate corruption in the IBT on its own initiative and to monitor IBT efforts to purge corruption in the Union.

This Application[1] has been brought by Frederick B. Lacey in his capacity as a

---

1. This is the first application submitted to this Court by a member of the Independent Review Board, and as such, will be deemed Application I of the Independent Review Board.

member of the Independent Review Board. On October 16, 1992, the Attorney General of the United States, William P. Barr, appointed Judge Lacey an Independent Counsel pursuant to Title 28, Code of Federal Regulations ("CFR"), Part 600. Judge Lacey has been charged with investigating the conduct of certain Government agencies, including the Central Intelligence Agency and the Department of Justice, in their handling of the Banca Nazionale del Lavoro ("BNL") matter. *See Letter from William P. Barr, Attorney General of the United States, to Frederick B. Lacey, Independent Counsel* (October 16, 1992) (on file in the Southern District of New York). Judge Lacey is to "[i]nvestigate all aspects of the production of CIA documents and information concerning [BNL] loans to or on behalf of Iraq" to various Government agencies, and to "[r]eview the [Justice] Department's entire handling of the BNL matter." *Id.* In this application, Judge Lacey seeks to clarify that serving as an Independent Counsel in the BNL matter does not conflict with his role as a member of the IRB.

## DISCUSSION

Section F(3) of the Rules provides that "[n]o member of the IRB or its staff, including the Chief Investigator, shall, at the same time as he holds any position with the IRB, hold any position with the Government, the IBT, or any IBT affiliate, other than membership in the IBT." In explaining the need for such a rule, this Court stated that

> [t]he Independent Review Board is broadly empowered to eliminate corrupt elements of the IBT. Such a task requires detachment, for the very presence in the Consent Decree of an IRB—like the Court–Appointed Officers before it—testifies to the difficulties of internal policing. Therefore, to accomplish its tasks, each IRB member must be fair and independent.

August 19, 1992 Opinion & Order, 803 F.Supp. 761, 796 slip opinion at 82 (S.D.N.Y.1992) ("*IRB Rules Opinion*"). The issue, then, is whether Judge Lacey's role as Independent Counsel is a "position

with the Government" as contemplated by the Rules.

It is clear that "[t]he spirit ... of this Consent Decree command[s] that its specific language be given the most reasonable interpretation possible." October 18, 1989 Opinion & Order, 723 F.Supp. 203, 210 (S.D.N.Y.1989), *aff'd,* 931 F.2d 177 (2d Cir. 1991); *see, e.g., SEC v. Levine,* 881 F.2d 1165, 1179 (2d Cir.1989); *Canterbury Belts Ltd. v. Lane Walker Rudkin, Ltd.,* 869 F.2d 34, 38 (2d Cir.1989). Any reasonable interpretation of the Consent Decree or the Rules must consider the purpose of the provision in question, and how that provision advances the goals of the Consent Decree. *IRB Rules Opinion,* at 778–79.

The IBT has chosen to disregard this well established principle. Instead of proffering an argument that addresses the intent underlying Rule F(3), or advocating an interpretation of the Rule that at least recognizes the larger goals of the Consent Decree, the IBT has offered a mechanistic interpretation of the Rule without regard for its purposes or those of the Consent Decree. This is a patently unreasonable interpretation of the Rule, and, it should be noted, one directly in conflict with the IBT's prior position. When this Rule was first proposed, the IBT staunchly opposed it on the ground that it removed from the parties the "the absolute and unfettered right [supposedly contained in the Consent Decree] to select representatives to the IRB." *Memorandum of Law of IBT in Opposition to Application for an Order Approving IRB Rules,* at 59. This Court rejected the IBT's position. *See IRB Rules Opinion,* at 796–97. Suddenly, the IBT has become a staunch supporter of the Rule as it would like to see it interpreted. The IBT's new and contradictory stance in this matter suggests not a changed view of Consent Decree law, but yet another "zealous legal attack on the reforms contained in the" Consent Decree. *Id.,* at 777. Sadly, although a new IBT administration has assumed office, it appears to have adopted the old Administration's attitude toward the Consent Decree, one characterized by

intransigence and mindless opposition to its own agreement. *Id.* at 777–78.

An interpretation of Rule F(3) must begin with an analysis of the motivations underlying its promulgation. Rule F(3) is designed to foster the effectiveness of the IRB by ensuring the fairness of its members and furthering the general membership's perception that the IRB is a neutral entity. The Rule recognizes the potential threat to impartiality created by simultaneously serving on the IRB and occupying a position with either the Government or the IBT. It thus allows this Court to assess whether, in a given situation, an affiliation with either the IBT or the Government threatens an IRB member's fairness or presents an unacceptable appearance of partiality.

The Rule, for instance, is primarily designed to prevent and would certainly prohibit a full-time Government or IBT employee from serving on the IRB. Such a situation is unacceptable because it is a paradigm of partisanship; it falls within the rubric of Rule F(3), however, not due to some mechanistic application of the Rule, but rather because such full-time employment at the very least will create the appearance of divided loyalties. In the absence of such a conflict of interest, it becomes necessary to assess whether an IRB member's affiliation with the Government or the IBT threatens neutrality or promotes the appearance of partisanship.

This Court finds that Judge Lacey's role as Independent Counsel is not a "position with the Government" as contemplated by Rule F(3). The duties Judge Lacey will perform as Independent Counsel pose no significant threat to his impartiality. In fact, far from promoting a pro-Government bias, the nature of Judge Lacey's assignment may place him in an adversarial posture toward the Government. Judge Lacey is charged with, among other tasks, searching for "improprieties" in the Justice Department's investigation of the BNL matter and investigating "all aspects" of CIA document production in connection with the BNL matter. *Letter from William P. Barr, Attorney General of the United States, to Frederick B. Lacey, Independent Counsel* (October 16, 1992) (on file in the Southern District of New York). In discharging this function, Judge Lacey enjoys "full power and independent authority to exercise all investigative and prosecutorial functions and powers of the Department of Justice." *See* 28 C.F.R. § 600(a). It would savage credulity to say that Judge Lacey, in the process of investigating and possibly prosecuting those in Government, including employees of the Department of Justice, would lose his impartiality as a member of the IRB and suddenly become predisposed to rule in the Government's favor. Judge Lacey must critically evaluate the Government's conduct, not ratify it.

Furthermore, although appointed by the Attorney General, Judge Lacey is not the Attorney General's clone. Judge Lacey enjoys, as his title suggests, independence from the Government. An Independent Counsel "may be removed from office, other than by impeachment and conviction, only ... for good cause, physical disability, mental incapacity, or any other condition that substantially impairs the performance of the Independent Counsel's duties." 28 C.F.R. § 600.3(a)(1). Even if dismissed, Judge Lacey is entitled to judicial review of the removal decision, and may obtain reinstatement or other appropriate relief. *See* 28 C.F.R. § 600.3(a)(3).[2] In reality, his sole "ties" to the Government are his appointment by the Attorney General and his use of Department of Justice resources. Having been appointed, his mandate is to uncover wrongdoing within governmental agencies and expose flaws in governmental investigations.

In sum, the position of Independent Counsel requires Judge Lacey not only to be independent of the Government, but also to adopt an adversarial stance toward it. Moreover, Judge Lacey is not an en-

---

2. It is worth noting that Judge Lacey, as Independent Counsel appointed under a federal regulation, enjoys the same independence, including the same protections against removal without cause, as an Independent Counsel appointed pursuant to statute. *Compare* 28 C.F.R. § 600.3 *with* 28 U.S.C. § 596.

trenched member of the federal bureaucracy, or employed full-time with the Government, but rather is an individual employed in the private sector who has consented to perform a specific task at the request of the Attorney General. Such temporary service by one not otherwise associated with the Government does not, in this instance, implicate the concerns that motivated the promulgation of Rule F(3). Thus, the argument that Judge Lacey is technically "within" the Department of Justice or an "inferior officer" of the United States, *see In re Sealed Case*, 829 F.2d 50, 56 (D.C.Cir.1987),[3] makes no relevant point for purposes of Rule F(3). The nature of his role as Independent Counsel, and the tasks he will perform in that capacity, simply do not subvert Judge Lacey's ability to serve as an impartial member of the IRB nor do they create an "intolerable appearance of bias." *IRB Rules Opinion*, at 796–97.

The IBT nevertheless contends that because Judge Lacey is paid by the Government for performing the discrete function of an independent counsel and because Judge Lacey took an oath as Independent Counsel to support and defend the Constitution, he occupies a position with the Government. Once again, the IBT tortures Rule F(3) by proffering a robotic reading of the Rule. Rule F(3) bars an IRB member's affiliation with the Government or the IBT only when such an affiliation threatens impartiality. The IBT has proffered factors that go to whether, in a literal sense, Judge Lacey is a Government employee, rather than whether he will be, in actuality and appearance, an impartial member of the IRB. As already noted, Judge Lacey's impartiality is not threatened by his serving as Independent Counsel. An example illuminates the shallow nature of the IBT's argument. Like an Independent Counsel, a federal judge is paid by the Government, and also must take an oath to support and defend the Constitution. Taking the IBT's argument to its logical conclusion, all federal judges occupy "positions with the Gov-

ernment," such that they could not impartially address matters where the Government is a party. Nevertheless, it is the unquestioned responsibility of every federal judge to try all cases in a just and impartial fashion. More often than not, the Government is a party in the matters heard in federal court; nevertheless, the fact that the Government issues a judge's paycheck in no way compromises his or her ability or duty to render fair and impartial decisions. It is ludicrous even to suggest that a federal judge be barred from adjudicating matters where the Government is a party. Similarly, the fact that Judge Lacey is paid by the Government for serving as Independent Counsel and the fact that he took an oath of office in no way negates or impairs his ability to render impartial decisions.

The IBT's opposition to Judge Lacey's appointment as Independent Counsel is all the more striking given that originally it opposed Rule F(3) and wanted to allow one of the current members of the IRB, Harold E. Burke, to continue as Special Assistant to the IBT General President. In contrast to Judge Lacey's relationship with the Government, Mr. Burke, as the General President's aide, was not in an adversarial stance toward the IBT, was certainly not independent of the IBT, and was a full-time employee of the IBT. Nevertheless, as already noted, the IBT originally urged rejection of a Rule that prohibits such blatant partisanship. It desired to further a situation where Mr. Burke, as an IRB member, could be called upon to investigate both his immediate supervisor, General President Carey, and his full-time employer, the IBT, and where his own actions on behalf of the IBT could be subject to IRB scrutiny. The IBT's stances in these matters are not just in conflict, but are wildly contradictory positions that in both cases advocated extreme results that had opposite effects. This leads to one of two conclusions: the IBT and its counsel have exhibited intellectual myopia, or, perhaps more chilling, a

---

**3.** *In re Sealed Case* and other authorities cited by the IBT do not support its position that an Independent Counsel holds a Department of Justice position. Rather, these cases deal with whether the Attorney General has constitutional power to appoint an Independent Counsel and to direct him to perform specific functions.

desire to stymie the work of the IRB at all costs.

## CONCLUSION

The application of Frederick B. Lacey, to clarify that his role as Independent Counsel in the BNL matter does not conflict with IRB service, is hereby granted.

SO ORDERED.