INTERNATIONAL CONTROLS AND MEASUREMENTS CORP., a New York Corporation, Plaintiff,

v.

WATSCO, INC. and Watsco Components, Inc., both Florida Corporations, Defendants.

WATSCO, INC. and Watsco Components, Inc., both Florida Corporations, Counterclaimants,

v.

INTERNATIONAL CONTROLS AND MEASUREMENTS CORP., a New York Corporation, Counterdefendants.

Civ. A. No. 92–CV–1304 (FJS).

United States District Court, N.D. New York.

May 23, 1994.

Harris, Beach & Wilcox (August E. Roehrig, of counsel), Syracuse, NY, for plaintiff and counterdefendant.

MacKenzie Smith Lewis Mitchell & Huggins (Arthur A. Chalenski, Jr., Peter D. Carmen, of counsel), Syracuse, NY, for defendants and counterclaimants.

## DECISION AND ORDER

SCULLIN, District Judge:

### INTRODUCTION

Plaintiff has brought this patent infringement action pursuant to 35 U.S.C. § 284, alleging that defendants have willfully infringed upon plaintiff's patent for an air conditioning device by, *inter alia,* marketing these infringing products. Defendants have denied infringement and have counterclaimed for damages arising out of plaintiff's alleged unfair competition and patent misuse as well as for a judicial declaration that the patent at issue is invalid.

On August 12, 1993, after Magistrate Di Bianco conducted an extensive hearing on plaintiff's motion for a preliminary injunction, the court approved Magistrate Di Bianco's

report-recommendation and entered a preliminary injunction against both defendants. Paragraph 3 of that Order (the "marketing" paragraph) held that "Defendants are thus enjoined from marketing all models of the WATSCO EAC 511 series except for the Model 511 ADJ (to the extent that it is still used) and their WATSCO EAC–650–003–300–W, pending the outcome of the instant action". On January 24, 1994, plaintiff filed a motion to hold defendants in contempt of that Order, and specifically the "marketing" paragraph. The court heard oral argument on this motion on April 8, 1994 and reserved decision at that time. This order constitutes the decision of the court.

## BACKGROUND

At issue in this dispute are "lock-out timers" (also known as time delay devices), which are used to prevent the compressor in an air conditioning system from prematurely restarting after the system has been shut off. Plaintiff ICM claims that it owns the exclusive right to manufacture, use and market lock-out timers embodying the invention described in United States Patent No. 4,991,049, entitled "Anti–Short–Cycle–Circuit", issued on February 5, 1991 to Andrew S. Kadah. Plaintiff alleges that it has acquired this exclusive right through its acquisition of the patent by agreement with the patent inventor, Mr. Kadah, and defendant Watsco Components's model EAC–511/4–300–W and EAC–650–003–300–W lock-out timers infringe on that patent.

Plaintiff ICM and defendant Watsco Components actively compete in the market for these devices. Defendant Watsco, Inc. is a "holding company", doing business solely through its subsidiaries, one of which is defendant Watsco Components. Watsco Components markets, sells and ships its own products as well as distributing them nationally through several distributors, the independence of one of which, Gemaire, plaintiff ICM challenges.

Like Watsco Components, Gemaire is substantially owned by Watsco, Inc. Watsco, Inc. owns 80% of Gemaire, although defendants assert that there is no interrelation of operation, management or employees between the two entities.

## DISCUSSION

### A. The Standard for Civil Contempt

■ Defendants deny that they intended to violate the injunction and cite to governing Second Circuit law holding that simply violating a court order does not expose a party to liability for civil contempt. That law directs that the court's contempt power may be invoked only when the following three conditions are met: (1) the order the party allegedly failed to comply with is clear and unambiguous; (2) the proof of noncompliance is clear and convincing; and (3) the party has not diligently attempted in a reasonable manner to comply with the Order. *New York State Nat'l Org. for Women v. Terry*, 886 F.2d 1339, 1351 (2d Cir.1989), *cert. denied*, 495 U.S. 947, 110 S.Ct. 2206, 109 L.Ed.2d 532 (1990).

■ The movant must prove each of these three elements by clear and convincing evidence. *Schmitz v. St. Regis Paper Co.*, 758 F.Supp. 922, 925 (S.D.N.Y.1991) (Broderick, J.). Clear and convincing evidence is a quantum of proof lying at an intermediate point between the "preponderance of the evidence" standard appropriate to most civil cases and the "beyond a reasonable doubt" standard employed in criminal prosecutions. *Addington v. Texas*, 441 U.S. 418, 423–25, 99 S.Ct. 1804, 1808–09, 60 L.Ed.2d 323 (1979). Although not capable of precise definition, clear and convincing evidence has been "described as evidence which produces in the mind of the trier of fact an abiding conviction that the truth of a factual contention is 'highly probable.'" *Buildex, Inc. v. Kason Indus., Inc.*, 849 F.2d 1461, 1463 (Fed.Cir.1988) quoting *Colorado v. New Mexico*, 467 U.S. 310, 316, 104 S.Ct. 2433, 2437, 81 L.Ed.2d 247 (1983), *reh'g denied*, 468 U.S. 1224, 105 S.Ct. 19, 82 L.Ed.2d 915 (1984). In applying the Second Circuit's contempt calculus, some courts have considered "whether the defendant has 'displayed an evident sense of non-urgency bordering on indifference.'" *Id.* at 927, quoting *Aspira Of New York v. Board of Educ. Of The City of New York*, 423 F.Supp. 647, 654

(S.D.N.Y.1976). *See also Equal Employment Opportunity Comm. v. Local 580, Int'l Ass'n Of Bridge, Structural And Ornamental Ironworkers, Joint Apprentice–Journeyman Educ. Fund*, 925 F.2d 588, 594 (2d Cir.1991); *Wojnarowicz v. American Family Ass'n.*, 772 F.Supp. 201, 202 (S.D.N.Y.1991) (The court "finds no 'willfulness' on the part of defendants and concludes that the mailings were mistakes from which no malevolence may be presumed."); *E.I. DuPont De Nemours & Co. v. Schnur & Cohan, Inc.*, 85 Civ. 7844, 2 U.S.P.Q.2d 1772, 1986 WL 15723 at *3 (S.D.N.Y. November 10, 1986) ("Brenner's actions, therefore, amount to either a deliberate violation of the preliminary injunction, or at the very least, deliberate indifference to its terms."). *But see Canterbury Belts Ltd. v. Lane Walker Rudkin, Ltd.*, 869 F.2d 34, 39 (2d Cir.1989) ("The [district] court concluded that ... no showing of intentional violations had been made. This determination is not clearly erroneous, and we accordingly do not disturb it. We note, however, that sanctions for civil contempt can be imposed without a showing of willfulness.")

### B. Plaintiff's Allegations of Contempt

Plaintiff claims that defendants are in contempt of the court's August 12, 1993 Order through the commission of the following acts:

1. On November 30, 1993, plaintiff ICM's Florida manufacturing representative, Henry LeBlanc purchased an enjoined WATSCO Model EAC–511 from Gemaire, whose clerk informed LeBlanc that he had "plenty of the Watsco EAC–511 Series time delay units in stock." LeBlanc Aff. at ¶ 8.

2. On September 23, 1993, Watsco Components shipped an enjoined EAC–650 to its customer, Locke Supply.

3. On October 13, 1993, Watsco Components shipped fifty enjoined EAC–650 units "on consignment" to a distributor, E.S. Gallagher and received payment on November 26, 1993, when E.S. Gallagher sold the units.[1]

### C. Defendants' Claim of Good Faith

Defendants admit most of the essential facts, but supplement the record to place these incidents in a different context. In addition, they offer general evidence of their alleged good faith efforts to comply with the court's Order. First, they offer the uncontroverted affidavit of Watsco Components's president, Neal Fischer, who avers that he personally instructed the eight person sales staff to cease marketing the enjoined EAC–511 and EAC–650 lock-out timers after he received notice of the court's Order on September 3, 1993.

Second, they offer the uncontroverted affidavit of Martin Katz, Watsco Components's controller, who avers that his examination of the relevant sales records shows that from August 1993 to February 1994, Watsco Components sold 2,754,000 products or units. This would indicate that the alleged violations constituted less than 0.01% of Watsco's total sales by unit. However, it is unclear how many of those sales were attributable to the enjoined units or how many units of the enjoined devices were sold in the same period prior to the entry of the August 12 Order.

### D. Defendants' Specific Explanations

Specifically, defendants offer the following explanations for the alleged violations to demonstrate their alleged good faith attempts to comply with the Order.

#### 1. The Gemaire Sale

##### a. Agency

▮ Although Gemaire is not named in the injunction Order, it is still subject to the restrictions named in that Order if it is either (a) an agent of Watsco, Inc. or (b) is "in active concert or participation with it" and Gemaire "received actual notice of the order by personal service or otherwise." Fed. R.Civ.P. 65(d). Thus, the threshold inquiry in examining this transaction is whether Gemaire can be considered an agent of Watsco, Inc.[2]

---

1. In its moving papers, plaintiff characterized this transaction as two distinct sales of 50 EAC–650 units to E.S. Gallagher. However, evidently after reviewing defendants' opposition submis-

sions, plaintiff revised its allegations and alleged that this constituted a single sale of 50 units.

2. Plaintiff ICM has not argued that Gemaire fits the second alternative, namely that it is in active

Plaintiff advances its agency argument by relying on two uncontroverted facts and one factual contention. First, it observes that defendant Watsco, Inc. owns eighty per cent of the stock of Gemaire. Second, plaintiff attaches a copy of Watsco, Inc.'s 1992 Annual Report to show that its financial statement is consolidated to incorporate the finances of its subsidiaries. Third, it contends that Watsco, Inc. exercises sufficient control over the operations of Gemaire to establish a principal-agent relationship.

To show the extent of Watsco Inc.'s alleged control over Gemaire, the plaintiff offers excerpts from the deposition of Albert Nahmad, Watsco, Inc.'s president and a director of Gemaire. At pages 37 and 38 of his deposition, Nahmad testified that he had input on the operations of distribution subsidiaries such as Gemaire with respect to acquisitions, large investments and expansion. However, he also stated that Watsco Inc.'s structure was very decentralized and the subsidiaries essentially ran themselves. *Id.* at 37. Hence, he claimed that Watsco, Inc. had no input into the business directions of the subsidiaries. Nahmad did testify that he would meet with the CEO's of the manufacturing subsidiaries to discuss long-term planning and strategy, *id.* at 36, but, while including whole pages of attorney colloquy, the plaintiff has not included any deposition testimony relative to meetings or other contacts between Nahmad and the CEO's of Watsco, Inc.'s distribution subsidiaries, such as Gemaire, providing evidence of Watsco Inc.'s alleged control of those subsidiaries.

Finally, plaintiff apparently takes great stock in Nahmad's testimony that he had no knowledge of any steps that Watsco Components took to comply with the injunction. *Id.* at 108.

Defendants attempt to explain Gemaire's sale of a Watsco Components EAC–511 unit to LeBlanc by insisting that Gemaire is not an agent or instrumentality of Watsco Components or of Watsco, Inc. In support, they have produced the affidavit of Ronald Newman, Watsco Inc.'s vice-president and treasurer averring to Gemaire's independence from Watsco, Inc., the owner of 80% of its stock, and Watsco Inc.'s purported inability to interfere in Gemaire's management or operations. Newman also represents that Watsco, Inc. was unaware of Gemaire's sale of the unit prior to receipt of plaintiff's motion.[3] Defendants also point out that Gemaire's distribution is not limited to products produced by Watsco Components and includes products produced by Watsco Components's competitors, such as the allegedly infringing unit manufactured by plaintiff ICM. Further, defendants claim that Gemaire does not use Watsco, Inc. property or resources in its operations.

The record does not demonstrate an agency relationship between Watsco, Inc. and Gemaire. Plaintiff may consider a wholly-owned subsidiary with the level of interrelationship with its parent shown in this record to be the parent's agent, but the law is otherwise. *See Loral Fairchild Corp. v. Victor Co. of Japan, Ltd.,* 803 F.Supp. 626, 632 (S.D.N.Y.1992) (Johnson, J.) (A wholly-owned subsidiary was not an agent of its parent even though four of its directors were representatives of the parent.). *See also National Labor Relations Bd. v. Deena Artware, Inc.,* 361 U.S. 398, 402–03, 80 S.Ct. 441, 443, 4 L.Ed.2d 400 (1960) ("The insulation of a stockholder from the debts and obligations of his corporation is the norm, not the exception. Yet, as Mr. Justice Cardozo said in *Berkey v. Third Avenue R. Co.,* 244 N.Y. 84, 95, 155 N.E. 58, 61, 'Dominion may be so complete, interference so obtrusive, that by the general rules of agency the parent will be a principal and the subsidiary an agent. Where control is less than this, we are remitted to the tests of honesty and justice.' That

---

concert and participation with Watsco, Inc. and there is nothing in the record that Gemaire received actual notice of the injunction Order. Rule 65(d) does not require that an agent of an enjoined party have notice of an injunction order to be bound by its strictures. *Dole Fresh Fruit Co. v. United Banana Co., Inc.,* 821 F.2d 106 (2d Cir.1987).

3. Plaintiff has not produced any evidence as to when Gemaire received the enjoined units from Watsco Components. It simply relies on Watsco Inc.'s ownership of 80% of the stock of Gemaire to bring Gemaire's actions within the scope of the court's August 12 Order.

is not a complete catalogue [looking to inter-mingling of operations].")

### b. Piercing the Corporate Veil

Alternatively, relying on Florida law and particularly, the case of *Dania Jai–Alai v. Sykes,* 450 So.2d 1114 (Fla.1984), plaintiff seeks to pierce the corporate veil, asserting that Gemaire is a mere instrumentality of Watsco, Inc. and Watsco, Inc. used this subsidiary to accomplish an ulterior purpose, namely the violation of the Order.

■ At oral argument, plaintiff's counsel implied that it was self-evident that whether one Florida corporation was the instrumentality of another Florida corporation was an issue for Florida law. Undoubtedly, if this was a negligence case brought in a Florida state court arising out of an accident that occurred in Florida involving only Florida residents, as in *Dania Jai–Alai,* he would be correct. However, plaintiff has brought a patent case in a federal court in New York, and while choice of law principles in cases arising under federal question jurisdiction have not always been applied with precision, *see Mobil Oil Corp. v. Linear Films, Inc.,* 718 F.Supp. 260, 268 (D.Del.1989) (*"Mobil Oil "*); Note, *Piercing the Corporate Law Veil: The Alter Ego Doctrine Under Federal Common Law,* 95 Harv.L.Rev. 853, 859–61 (1982), invocation of those principles determines that federal common law, not Florida law, governs whether the veil should be pierced.[4] *See United States v. Nicolet, Inc.,* 712 F.Supp. 1193, 1201 (E.D.Pa.1989) ("[W]hen a federal statute is silent as to the choice of law to be applied, but overriding federal interests exist [such as the promotion

of scientific progress by the granting of exclusive rights in inventions described in Article I, Section 8 of the United States Constitution] courts should fashion uniform rules of decision.") citing *Clearfield Trust Co. v. United States,* 318 U.S. 363, 366–67, 63 S.Ct. 573, 574–75, 87 L.Ed. 838 (1943).

■ In so concluding, the court observes that in patent cases, as in state corporation cases, it is fundamental that "the corporate entity should be recognized and upheld, unless specific, unusual circumstances call for an exception." *Manville Sales Corp. v. Paramount Sys., Inc.,* 917 F.2d 544, 552 (Fed. Cir.1990) quoting *Zubik v. Zubik,* 384 F.2d 267, 273 (3d Cir.1967), *cert. denied,* 390 U.S. 988, 88 S.Ct. 1183, 19 L.Ed.2d 1291 (1968). Courts have found such circumstances in the patent area in a parent's control over the actions of its subsidiary and a showing that the parent *"could* have stopped the infringement", *A. Stucki Co. v. Worthington Indus., Inc.,* 849 F.2d 593, 596 (Fed.Cir.1988) (emphasis in original), or where a defendant "employ[s] the corporate fiction to execute a fraud or inflict an injustice". *Mobil Oil,* 718 F.Supp. at 270. *See also Kinetic Instruments, Inc. v. Lares,* 802 F.Supp. 976, 985 (S.D.N.Y.1992) ("In determining whether to disregard the corporate entity" to obtain jurisdiction over a corporate officer ... [t]he court may consider such factors as the lack of corporate formalities, the inadequate capitalization of the corporation, and the intermingling of corporate and individual finances.)

---

4. Even if *Dania Jai–Alai* was the governing law on this issue, plaintiff's reliance thereon is unavailing. In *Dania Jai–Alai,* the plaintiff-respondent sought damages for the injuries she allegedly suffered when a Carrousel parking attendant struck her with her own car in the process of parking it. At the close of the evidence, the trial court directed verdicts against Carrousel Concessions, Inc. for employee negligence and against Dania Jai–Alai Palace, Inc. on the ground that the public had been led to believe that Dania Jai–Alai and Carrousel, each of which was a subsidiary of a third corporation, was in fact a single legal entity.

The Florida Supreme Court quashed an appellate court's affirmance of the trial court's directed verdicts. The Florida court observed that in

Florida (as in New York) "courts are reluctant to pierce the corporate veil", *Dania Jai–Alai,* 450 So.2d at 1121, and it found that the record contained "evidence which, if accepted by the jury, tended to show that Dania and Carrousel operated independently of each other." *Id.* Among this evidence was that Carrousel (1) had separate offices, (2) controlled its own operations, (3) had separate bank accounts and profit and loss statements, (4) dealt with independent suppliers, (5) independently hired, fired and controlled its employees, and (6) issued parking tickets identifying itself as the parking operator. *Id.* In the instant case, many, if not all, of these considerations distinguish Gemaire and Watsco, Inc. as distinct legal entities.

In the case at bar, the plaintiff has failed to provide clear and convincing evidence of control, fraud or any other mechanism by which Watsco, Inc. operates Gemaire as a mere instrumentality. Absent such a showing, the court will not pierce the corporate veil.

### 2. The Locke Supply Shipment

■ Defendants maintain that they did not "market" any of the enjoined products to Watsco Components's customer, Locke Supply Co. Instead, they argue that they simply honored a pre-existing warranty and shipped a single unit to its customer to replace a part. In so doing, they insist, they did not market the unit, as the customer had paid for the original part prior to the entry of the injunction and they simply honored the warranty pursuant to that agreement. Plaintiff does not contest these facts, but urges that Watsco Components's appropriate course under the injunction was to refund the customer's initial purchase price, not to replace the part.

The court finds that plaintiff has not proven by clear and convincing evidence that the defendants violated the terms of the injunction by this alleged action.

### 3. The E.S. Gallagher Sale .

Defendants admit that Watsco Components marketed 50 enjoined lock-out timers to its customer, E.S. Gallagher, through an alleged mistake by one of its salespersons, Susan Ottoway. *See* Fischer Aff. and Ottoway Aff. However, defendants assert that this "honest" and "innocent mistake" does not constitute contempt under the Second Circuit's formulation, especially where they have "substantially complied" with the terms of the Order. *See The New York Times Co. v. Newspaper And Mail Deliverers' Union Of New York And Vicinity*, No. 92 Civ. 3345, 1992 WL 110721 (S.D.N.Y. May 12, 1992) (Leval, J.) ("The Union contends that it is in substantial compliance and it should not be held responsible for [its] inability to control individual[s] ... These contentions are not convincing. As shown above, the Union has made only token attempts to secure compliance.") (collecting cases on substantial compliance).

### a. Reasonable Attempts to Comply with an Injunction

■ *To avoid the sanction of contempt, the governing law directs that an enjoined party must make a reasonable attempt to comply with the court order and it must diligently implement that program of compliance.* Plaintiff has not introduced clear and convincing evidence that the defendants did not do so and thus, the motion will be denied. However, defendants should not take too much comfort in this ruling. Plaintiff's motion has been defeated less by defendants' program of compliance than by the substantial burden of proof on a motion for contempt.

Defendants have characterized Watsco Components's sale of the enjoined units to E.S. Gallagher as "one innocent mistake." Defendants' Memorandum at 7. Now that the defendants have been apprised of at least one deficiency in their program of compliance, namely that it is wholly dependent on the memory and attentiveness of Watsco Components's sales staff, the bounds of the level of effort necessary to reach reasonable compliance have been changed and what was once reasonable may now have become inadequate.[5]

In his affidavit, Watsco Components's president, Mr. Fischer, averred that "our sales staff, in my opinion, has done a commendable job in complying with my unusual instructions." Fischer Aff. at ¶ 8. While the sales staff's compliance may have been commendable, the instructions were not. At oral argument, plaintiff's counsel offered a far more reasonable program of compliance than that implemented by Watsco Components, consisting of (1) writing a warning into the computer sales or stock list database to alert any salesperson who is about to enter an order to market enjoined products and (2) separating enjoined products from the re-

---

5. The parties should not read this opinion as allowing an enjoined party one free "innocent mistake." The court does not exclude the possibility that in future cases, an enjoined party that maintains it committed only one "innocent mistake" will be shown to be in contempt of a court order. In the instant case, had the evidence in the record tipped the balance slightly more in the direction of the plaintiff, that evidence would have been clear and convincing.

**592**

mainder of Watsco Components's products wherever they may be stored. However, at the time that defendants' program of compliance was implemented, the court cannot find that it was unreasonable. Defendants may take solace from the fact that the Second Circuit has not bound this court to a "commendable" or "praiseworthy" standard for compliance with an injunction order.

### E. Defendants' Costs and Fees

■ Pursuant to Local Rule 41(d), defendants seek their costs and reasonable attorney fees incurred in defending this motion. That rule provides that the court has discretion to award such costs and fees.

Had plaintiff's counsel discussed the disputed incidents with defendants' counsel prior to filing a contempt motion, it is likely that certain issues raised by this motion would not have been before this court for review. The record reveals no evidence of such discussion or attempts at discussion. However, as discussed above, the court has also concluded that had defendants made a more comprehensive effort to comply with the terms of the injunction, it is highly probable that there would not have been no contempt dispute before the court. Defendants' request is denied.

### CONCLUSION

It is hereby ORDERED that the plaintiff's motion to hold defendants in contempt of the court's August 12, 1993 order entering an injunction is DENIED. It is further

ORDERED that defendants' request for costs and attorneys' fees is DENIED.

**IT IS SO ORDERED.**