PRO–CHOICE NETWORK OF WESTERN NEW YORK, et al., Plaintiffs,

The Children's Hospital of Buffalo, Intervenor–Plaintiff,

v.

PROJECT RESCUE WESTERN NEW YORK, et al., Defendants.

No. 90–CV–1004A.

United States District Court, W.D. New York.

March 15, 1994.

Lucinda Findley, Glenn E. Murray, for plaintiffs.

James J. Duane, Laurence D. Behr, for defendants.

## DECISION AND ORDER

ARCARA, District Judge.

Presently before the Court are defendants' objections to Magistrate Judge Carol E. Heckman's October 1, 1993 Report and Recommendation regarding plaintiffs' applications for attorneys' fees and costs in connection with this Court's prior Decisions and Orders finding these defendants in civil contempt of the Court's September 27, 1990 Temporary Restraining Order ("TRO").

## BACKGROUND

In a Decision and Order filed July 24, 1992, the Court found defendant Nancy Walker in civil contempt for violating the TRO on November 29 and December 1, 1990. Defendants Bonnie Behn and Carla Rainero Goss were found in civil contempt in a Decision and Order filed August 14, 1992, for violating the TRO on October 20, 1990. Paul

Schenck, Robert Schenck and Project Rescue Western New York ("Project Rescue") were found in civil contempt in a Decision and Order filed September 14, 1992, for violating the TRO on December 29, 1990. Defendants Paul Schenck and Daren Drzymala were found in civil contempt in a Decision and Order filed September 28, 1992, for violating the TRO on September 28, 1991.

In these Decisions and Orders, the Court found that the defendants' violations of the TRO were wilful, that the TRO clearly put them on notice that they could be held liable for attorneys' fees and costs associated with enforcement of the TRO, and therefore, that plaintiffs were entitled to attorneys' fees and costs relative to each of the contempts. The Court set a schedule for plaintiffs to file affidavits of attorneys' fees and costs, and for defendants to respond. Thereafter, the Court referred the requests for attorneys' fees and costs to Magistrate Judge Heckman for report and recommendation. *See* Item No. 248 (Walker); No. 261 (Behn and Rainero); No. 314 (Schenck and Drzymala); No. 315 (Schenck, Schenck and Project Rescue).

Defendants Walker, Behn and Rainero Goss filed papers in opposition to the applications for attorneys' fees and costs relative to their contempts. *See* Item Nos. 246, 312. With respect to the Paul Schenck, Robert Schenck and Project Rescue contempt, no opposing papers were filed by the November 6, 1992 deadline set by this Court. *See* Item No. 250. However, on January 19, 1993, William J. Ostrowski, Esq. wrote a letter to Magistrate Judge Heckman on behalf of Paul and Robert Schenck stating that he had been ill and requesting a hearing on the attorneys' fees petition in order to explore the professional services rendered, as well as the Schencks' financial condition. *See* Item No. 397, at 5. Magistrate Judge Heckman found that Mr. Ostrowski's general request for a hearing, without substantiation, and without otherwise attacking the fee application, was insufficient to place the issues in dispute, and therefore considered the Schenck, Schenck and Project Rescue fee application to be substantially unopposed. *Id.* at 21. No opposition to the application for attorneys' fees and costs was filed relative to the Paul

Schenck and Daren Drzymala contempt. *Id.* at 22.

In a well-reasoned and thorough Report and Recommendation, Magistrate Judge Heckman recommended that attorneys' fees and costs be awarded to plaintiffs as to each contempt: $38,931.10 against defendant Walker; $25,260.16 against defendants Behn and Rainero Goss, jointly and severally; $35,796.00 against defendants Paul Schenck, Robert Schenck and Project Rescue, jointly and severally; and $10,980.16 against defendants Paul Schenck and Daren Drzymala, jointly and severally. *Id.* at 2.

On October 18, 1993, objections to the Report and Recommendation were filed by Mr. Ostrowski on behalf of Paul and Robert Schenck. Item No. 402. On the same date, objections were filed by James J. Duane, Esq. on behalf of defendants Walker, Behn and Rainero Goss. Item No. 403. No objections were filed on behalf of defendants Paul Schenck and Daren Drzymala. Plaintiff's filed a response to the objections on December 1, 1993, Item No. 415, and the Court heard oral argument on December 20, 1993.

## DISCUSSION

Pursuant to 28 U.S.C. § 636(b)(1), this Court must make a *de novo* determination of those portions of the Report and Recommendation to which objections have been made. Upon such *de novo* review, and after reviewing the submissions of the parties, and hearing argument from counsel, the Court adopts the proposed findings of the Report and Recommendation.

### I. *Schenck, Schenck and Project Rescue*

█ Defendants Paul and Robert Schenck have raised several objections to the Report and Recommendation. They contend that Magistrate Judge Heckman erred: (1) in permitting plaintiffs to recover for services not supported by contemporaneous time records; (2) in permitting plaintiffs to recover for inadequately documented time; (3) in permitting plaintiffs to recover for time spent on matters unrelated to the Paul and Robert Schenck civil contempt, or unjustified by sound billing judgment; and (4) in permitting plaintiffs to recover for witness fees in excess

of those permitted under 28 U.S.C. § 1821.[1] Item No. 402.

The Court will not address these objections, however, because it finds that Paul and Robert Schenck and Project Rescue have waived any right to raise objections to the Report and Recommendation before this Court due to their failure to raise such arguments below. None of these defendants filed responses to plaintiffs' fee application by the November 6, 1992 deadline set by the Court. Nor did they seek an extension of time to so respond. It was not until January 1993 that a letter was received from defendants' counsel seeking an opportunity for a hearing. Magistrate Judge Heckman considered the letter untimely and found that the general request for a hearing, without substantiation, and without otherwise attacking the fee application, was insufficient to place the issues in dispute. Item No. 397, at 21.

These defendants now seek to raise substantive objections to the Report and Recommendation before this Court. However:

> [t]he rule [regarding objections to reports and recommendations] does not permit a litigant to present new initiatives to the district judge. We hold categorically that an unsuccessful party is not entitled as of right to de novo review by the judge of an argument never seasonably raised before the magistrate.

*Paterson–Leitch Co., Inc. v. Massachusetts Mun. Wholesale Elec. Co.,* 840 F.2d 985, 990–91 (1st Cir.1988) (citing *Borden v. Secretary of Health & Human Servs.,* 836 F.2d 4, 6 (1st Cir.1987)). This rule applies with even greater force to a party who has failed to raise any timely argument before the magis-

trate judge. To allow otherwise would render the procedure for reports and recommendations ineffective, and the Court's deadlines meaningless. In addition, the defendants have not set forth any reason why their response to plaintiffs' fee application should not have been rejected below as untimely.

Thus, because defendants Paul and Robert Schenck and Project Rescue have waived the right to file objections,[2] the Court adopts Magistrate Judge Heckman's recommendation that plaintiffs be awarded attorneys' fees and costs of $35,796.00 relative to this contempt.

## II. *Walker, Behn and Rainero Goss*

Defendants Walker, Behn and Rainero Goss have raised three objections to the Report and Recommendation. They assert that Magistrate Judge Heckman erred: (1) in refusing to consider their limited financial resources and the relative wealth of the parties; (2) in refusing to limit plaintiffs' award of attorneys' fees to the amount plaintiffs actually paid their attorneys; and (3) in allowing plaintiffs to recover for time spent by two attorneys doing the same work.[3] Item No. 403.

■ With respect to defendants' first objection, the Court adopts Magistrate Judge Heckman's proposed finding that defendants' financial circumstances and their ability to pay are not relevant to the determination of attorneys' fees in this case. The cases cited by defendants, as Magistrate Judge Heckman noted, are inapposite. The purposes behind the award of attorneys' fees under Title VII, Fed.R.Civ.P. 11, or the inherent

---

1. In an affidavit submitted by Mr. Ostrowski, he appears to raise several additional objections: (1) lack of statutory basis for the award of attorneys' fees; (2) that there should be an inquiry into whether or not reimbursement has been made by Isabel Marcus, Esq. and Lucinda Finley, Esq. for their use of the University at Buffalo School of Law's facilities; and (3) that it is inappropriate to fix such high attorneys' fees based on affidavits alone, without a testimonial hearing. Item No. 399.

   Because these arguments were not raised in the objections filed by Mr. Ostrowski or at oral argument, the Court will not consider them as separate objections. Moreover, they have been

adequately addressed by Magistrate Judge Heckman in the Report and Recommendation.

2. Even if defendants' objections were properly before the Court, the Court would reject them because Magistrate Judge Heckman's report and recommendation does not permit plaintiffs to recover as against these defendants for services not supported by contemporaneous time records; for inadequately documented time; or for matters unrelated to this particular contempt proceeding.

3. In general, there is no objection with respect to the award of costs recommended by Magistrate Judge Heckman.

power of the court to sanction bad faith conduct are different from the purpose behind the award of attorneys' fees in these civil contempt proceedings. As noted by the Court in its Decisions and Orders finding these defendants in civil contempt, a successful complainant in a contempt proceeding is entitled to the reasonable costs of prosecuting the contempt, including attorneys' fees, if the violation of the court's order is found to have been wilful. *Canterbury Belts, Ltd. v. Lane Walker Rudkin, Ltd.*, 869 F.2d 34, 39 (2d Cir.1989); *Vuitton et Fils S.A. v. Carousel Handbags*, 592 F.2d 126, 130 (2d Cir.1979). As previously noted, the Court found that defendants' violations of the TRO were wilful. Thus, plaintiffs are entitled to be compensated for the cost of bringing and prosecuting these contempts. While the Court is cognizant that an award of attorneys' fees against defendants Walker, Behn and Rainero Goss will strain their finances, these defendants were specifically put on notice that a violation of the TRO would result in attorneys' fees and costs being imposed. Defendants' conduct was egregious; it was their intentional violation of the Court's TRO that resulted in the instant award of attorneys' fees.

■ Even if a finding of financial ability to pay were necessary to determine an appropriate award of attorneys' fees, the Court has implicitly made that finding in its Decisions and Orders finding these defendants in civil contempt. The Court specifically considered the financial resources of the defendants before imposing a fine. In determining that an award of attorneys' fees and costs was also warranted, the Court made the implicit finding that defendants were able to pay such fees and costs. Moreover, to the extent defendants' ability to pay the attorneys' fees was not specifically considered, the Court now finds, based on the record presented, that defendants Walker, Behn and Rainero Goss are able to pay the fee award ultimately imposed on such reasonable terms as might be arranged. In addition, the Court notes that the award of attorneys' fees and costs

recommended by Magistrate Judge Heckman represents a significant reduction from the amount requested.[4] Thus, defendants' financial resources do not require a finding different from that recommended by Magistrate Judge Heckman.

■ With respect to defendants' second objection—that Magistrate Judge Heckman erred in refusing to limit plaintiffs' award of attorneys' fees to the amount plaintiffs actually paid their attorneys—the Court finds that there is no basis for imposing such a limitation on plaintiffs' award of attorneys' fees. As noted by Magistrate Judge Heckman, the cases that calculate fee awards in civil contempt cases use the same criteria as fee awards under 42 U.S.C. § 1988 generally. *See* Item No. 397, at 9. Attorneys' fees are calculated by multiplying the reasonable number of hours expended, by the prevailing local market rate for attorneys of similar skill and experience. *See Missouri v. Jenkins*, 491 U.S. 274, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989); *Blum v. Stenson*, 465 U.S. 886, 897, 104 S.Ct. 1541, 1548, 79 L.Ed.2d 891 (1984). The Supreme Court has held that the calculation of attorneys' fees should not vary depending on whether the successful party was represented by private counsel, an attorney serving *pro bono* or a nonprofit legal services organization. *Blum*, 465 U.S. at 894–95, 104 S.Ct. at 1547. Thus, the Court is unpersuaded by defendants' argument that the fee award should be calculated according to the cost of providing the services rather than the prevailing market rate.

■ Finally, defendants object to the recommended fee award on the ground that Magistrate Judge Heckman erred in allowing plaintiffs to recover for time spent by two attorneys doing the same work. The basis for this objection is Magistrate Judge Heckman's recommended finding that the hours claimed by Lucinda Finley, Esq. and Isabel Marcus, Esq. on the Walker and Behn and Rainero Goss contempts are reasonable.

---

4. With respect to the Walker contempt, plaintiffs sought $47,543.60 in fees and costs. Magistrate Judge Heckman recommends an award of $38,-931.10. With respect to the Behn and Rainero Goss contempt, plaintiffs sought $29,304.50 in fees and costs. Magistrate Judge Heckman recommends an award of $25,260.16.

Specifically, Magistrate Judge Heckman recommends compensating Ms. Finley for 150.5 hours on the Walker contempt proceeding and 105.3 hours on the Behn and Rainero Goss contempt. She recommends compensating Ms. Marcus for 98 hours on the Walker contempt and 56.5 hours on the Behn and Rainero Goss contempt. Item No. 397, at 13–14.

Defendants assert that to allow attorneys' fees as to both attorneys constitutes double billing. Initially, the Court notes that defendants do not specifically challenge the reasonableness of the hours spent by either attorney on any particular task. Nor do they assert that there was a duplication of work. Their argument appears to be simply that it was not necessary for two attorneys to be on the case and therefore only the work of one should be compensated.

Magistrate Judge Heckman addressed this issue below and found that plaintiffs' use of two counsel at the two contempt proceedings was reasonable. She stated that the use of two attorneys was warranted "given the number of violations of the court's orders, the complexity of the issues involved, the number of counsel in and out of the case for various defendants, the fact that discovery had not taken place, and in general the vigorous litigation posture adopted by the defendants." Item No. 397, at 15 (citations omitted).

In their objections, defendants address each of the factors relied on by Magistrate Judge Heckman in an effort to establish why none of them justify the use of two attorneys. Having carefully reviewed defendants' objection in this regard as well as plaintiffs' response, the Court finds that while several of the factors relied on by Magistrate Judge Heckman in allowing compensation for the work of both Ms. Finley and Ms. Marcus may not have been relevant or determinative with respect to these particular contempt proceedings, plaintiffs have nevertheless demonstrated that the use of two attorneys on these contempts was completely reasonable and necessary.

The nature and complexity of these contempt proceedings made it reasonable for plaintiffs to utilize more than one attorney. However, while two attorneys worked on these contempts, there is no indication that there was any duplication of work. The record establishes, and the Court's recollection from presiding over the contempt proceedings confirms, that Ms. Finley and Ms. Marcus did different work; that they split up the responsibility for various tasks including preparing and examining witnesses. Defendants have presented no evidence to establish that this is not so. Thus, whether plaintiffs used two attorneys splitting up the work, or one attorney doing all the work, the result in terms of the number of hours expended is the same. Indeed, the use of two attorneys may actually have increased the efficiency of the litigation. *See Wrozek v. City of Chicago*, 739 F.Supp. 400, 403 (N.D.Ill.1990) (noting in a civil contempt fee case that "consultations [between lawyers] often improve the efficiency of lawyers on a team, preventing duplication of tasks and resulting in a more efficient allocation of work").

In the absence of specific objections as to the number of hours expended by plaintiffs' attorneys, the Court adopts the recommendation of Magistrate Judge Heckman that all hours cited by Ms. Finley and Ms. Marcus be compensated.

### III. *Schenck and Drzymala*

As to the $10,980.16 in attorneys' fees and costs awarded against Paul Schenck and Daren Drzymala, based on the Court's review of the Report and Recommendation and the submission of plaintiffs, and no objections having been timely filed, the Court adopts Magistrate Judge Heckman's recommendation as to this award.

### CONCLUSION

Accordingly, for the reasons set forth above as well as in Magistrate Judge Heckman's Report and Recommendation, plaintiffs are awarded attorneys' fees and costs in the following amounts: $38,931.10 against defendant Walker; $25,260.16 against defendants Behn and Rainero Goss, jointly and severally; $35,796.00 against defendants Paul Schenck, Robert Schenck and Project Res-

cue, jointly and severally; and $10,980.16 against defendants Paul Schenck and Daren Drzymala, jointly and severally.

IT IS SO ORDERED.

## REPORT AND RECOMMENDATION

HECKMAN, United States Magistrate Judge.

Filed Oct. 1, 1993.

### *INTRODUCTION*

There are four pending applications for attorneys' fees and costs before the court, all of which have been referred to the undersigned for report and recommendation. For the reasons set forth below, it is recommended that fees and costs be awarded to plaintiffs (1) against defendant Walker in the amount of $38,931.10, (2) against defendants Behn and Rainero Goss, jointly and severally, in the amount of $25,260.16, (3) against defendants Paul Schenck, Robert Schenck and Project Rescue Western New York, jointly and severally, in the amount of $35,-796.00, and (4) against defendants Paul Schenck and Daren Drzymala, jointly and severally, in the amount of $10,980.16.

The procedural history of each application shall be described in turn.

### *BACKGROUND*

On July 24, 1992, Hon. Richard J. Arcara found defendant Nancy Walker in civil contempt for violating the terms of the court's temporary restraining order (TRO) dated September 27, 1990. Plaintiffs claimed that Nancy Walker violated the TRO on November 29, December 1 and December 8, 1990. The court found that violations had occurred on November 29 and December 1 but not on December 8, 1990. The court awarded damages in the amount of $10,000 payable to plaintiff Paul J. Davis, M.D. and Buffalo GYN Womenservices and made payment of a remaining $20,000 fine contingent upon future violations of the preliminary injunction.

On August 14, 1992, Judge Arcara found defendants Bonnie Behn and Carla Rainero

(now Goss) in civil contempt for violating the TRO on October 20, 1990. He ordered both defendants to pay $10,000 in damages to plaintiff Buffalo GYN Womenservices.

On September 14, 1992, Judge Arcara found defendants Paul Schenck, Robert Schenck and Project Rescue Western New York in civil contempt for violating the court's TRO on December 29, 1990. He ordered them each to pay $10,000.00 in damages to plaintiff Buffalo GYN Womenservices.

On September 28, 1992, Judge Arcara found defendants Paul Schenck and Daren Drzymala in civil contempt for violating the TRO on September 28, 1991. He fined Paul Schenck $20,000.00 and ordered Drzymala to pay $10,000.00 in damages to plaintiffs Barnett Slepian, M.D. and Buffalo GYN Womenservices.

Each of the four contempt decisions followed lengthy evidentiary hearings. The Walker hearing was held over the course of several days from February 6, 1991 to February 14, 1991. The Behn/Rainero Goss hearing was held over several days from June 18, 1991 to July 12, 1991. The Paul Schenck/Robert Schenck/Project Rescue hearing was held over several days from October 15, 1991 to January 30, 1992. The Paul Schenck/Drzymala hearing was held on May 27 and May 28, 1992.

In each of the four contempt decisions, Judge Arcara found that plaintiffs were entitled to reasonable costs and attorneys' fees, and set a schedule for additional briefing on this issue.

As directed, the plaintiffs filed applications in support of each of their motions for attorneys fees and costs (Items 243, 253, 265, 266, 269 and 270). Attorney James J. Duane, representing Walker, Behn and Rainero Goss, filed opposing papers.[1]

One of the objections raised by Walker, and incorporated by reference by Behn and Rainero Goss, was that any attorney fee should be based on the relative wealth of the

---

**1.** James J. Duane initially filed a memorandum of law on behalf of Walker (Item 246) but subsequently filed a letter (Item 312) noting that he also was representing Defendants Behn and

Rainero Goss and that they joined in the same memorandum of law previously filed on behalf of Nancy Walker.

parties. According to Walker, the evidence developed at the contempt trial established that defendants were impoverished and therefore no or very little fee should be awarded against them.

By order dated November 23, 1992, this court directed defendants Behn, Rainero and Walker to file supplemental affidavits as to their financial resources, or, in the alternative, to supply the court with the relevant excerpts from the contempt hearing transcripts establishing limited financial resources. In response, defendants Walker and Rainero Goss filed affidavits in December of 1992 (Items 326 and 327). Attorney James J. Duane also filed a two-page letter citing portions of the contempt trial relating to defendant Behn's financial condition (Item 325).

Plaintiffs filed a supplemental memorandum on the fee petition in Walker, Behn and Rainero Goss on January 19, 1993 (Item 336). Attorney Duane then filed a multi-page letter on behalf of Walker, Behn and Goss on March 29, 1993 (Item 360).

Defendants Paul Schenck and Daren Drzymala have not filed any papers in opposition to the application.

As to the fee petition against Paul Schenck, Robert Schenck and Project Rescue, defendants did not file any opposing papers within the time frame set by Judge Arcara. On January 19, 1993, Attorney William J. Ostrowski wrote to the court on behalf of Robert and Paul Schenck stating that he had been ill and requesting a hearing on the attorneys' fees petition in order to explore the professional services rendered, as well as the Schencks' financial condition.

## DISCUSSION

Each of the attorney fee petitions will be discussed in turn below. The Walker fee application is discussed together with the Behn and Rainero Goss application because the same issues are raised as to both.

## I. PLAINTIFFS' APPLICATIONS FOR ATTORNEYS' FEES AND COSTS AGAINST DEFENDANTS WALKER, BEHN AND RAINERO GOSS

The total amount claimed in the Walker application is $47,543.60. This consists of $4,106.10 in disbursements and the remaining amount as attorneys' fees.

Attorney Lucinda M. Findley claims that she spent 150.5 hours in the successful prosecution of Nancy Walker for civil contempt for incidents occurring on November 29, 1990 and December 1, 1990. She claims an hourly rate of $175.00, for a total bill for her legal services of $26,337.50. Co-counsel Isabel Marcus claims that she spent 98 hours at the rate of $150.00 an hour for a total of $14,700.00. Finally, plaintiffs submit a separate affidavit of Edward Murray, who claims that he spent 16 hours on this proceedings and should receive the rate of $150.00 per hour, for a total of $2,400.00. All counsel reduced by approximately 30% the total time expended on the contempt proceedings because there was a third incident of alleged contempt on December 8, 1990, on which plaintiffs did not prevail.

As for the Behn/Rainero Goss fee application, the total sought is $29,304.50. This consists of $2,402.66 in disbursements and the remaining amount as attorneys' fees. Lucinda M. Findley claims $18,427.50 for legal services (105.3 hours × $175/hr.) and Isabel Marcus claims $8,475 for legal services (56.5 hrs. × $150/hr.). Both attorneys attached contemporaneous time logs to the fee application. There is no reduction in the hours spent because plaintiffs were successful in all respects on the motion.

Defendants Walker, Behn and Rainero Goss oppose plaintiffs' request on several bases. First, defendants contend that the plaintiffs are limited to compensation for the costs they actually incurred in paying their attorneys. Second, defendants contend that the request is unreasonable and insufficiently documented. Finally, defendants claim that they are indigent and that any fee award should be limited by the defendants' financial condition.

Defendant Walker, through counsel, advised the Court that she would not seek oral argument on the motion and therefore the motion was submitted on the papers. Defendant Walker later sought oral argument

through Laurence D. Behr, Esq., who advised the court that he was appearing as local counsel to James Duane, Esq. for purposes of the contempt proceedings against Nancy Walker. In an order dated September 24, 1992, this belated request was denied. Defendant's counsel also requested the court to hold the motions in abeyance pending the Second Circuit's decision in appeals from the contempt order taken by defendants Walker (92–7854) and Behn and Rainero Goss (92–7954). On May 26, 1993, the Second Circuit dismissed the appeals for lack of appellate jurisdiction. Accordingly, the motions are ripe for decision.

## A. *The Proper Standard For Computing Attorneys' Fees*

The District Court's temporary restraining order states that defendants found guilty of contempt could be held liable "for all attorneys' and related costs incurred by plaintiffs in relation to enforcement of this order." Defendants Walker, Behn and Rainero Goss, citing this language, argue that plaintiffs are therefore limited to the amount of money they actually paid their attorneys to represent them in the contempt action, as opposed to the reasonable value of plaintiffs' attorneys' services.

When these motions were filed, there were two independent legal bases for the fee application. The first was under 42 U.S.C. § 1988, which allows attorneys' fees to the prevailing party in a civil rights case. The second is pursuant to the case law holding that a civil contemner is liable for attorneys fees. Following the Supreme Court's decision in *Bray v. Alexandria Women's Health Clinic,* —— U.S. ——, 113 S.Ct. 753, 122 L.Ed.2d 34 (1993), the district court granted defendants' motion to dismiss as to plaintiff's 1985(3) claim but retained pendent jurisdiction over the state law claims. Because plaintiffs' 1985(3) claim is no longer viable, defendants argue that the basis for an award of fees under 42 U.S.C. § 1988 does not exist.

■ It is unnecessary to address this argument because it is clear that plaintiffs are entitled to attorneys' fees as prevailing parties in civil contempt proceedings. *See, e.g., Alyeska Pipeline Serv. Co. v. Wilderness So-*

*ciety,* 421 U.S. 240, 258, 95 S.Ct. 1612, 1622, 44 L.Ed.2d 141 (1975). As to the computation of fees in contempt proceedings, Defendants argue that plaintiffs are limited in their recovery to actual out-of-pocket losses. Since plaintiffs' counsel in this case apparently were not charging plaintiffs for their legal services, defendants argue that plaintiffs cannot recover attorneys' fees.

There is no support for defendants' position. Rather, the cases that calculate fee awards in civil contempt cases use the same criteria as fee awards under 42 U.S.C. § 1988 generally. *See, New York State National Organization for Women v. Terry,* 737 F.Supp. 1350, 1363–67 (S.D.N.Y.1990), *aff'd in part and rev'd in part,* 961 F.2d 390 (2d Cir.1991), *vacated and remanded on other grounds, Pearson v. Planned Parenthood Margaret Sanger Clinic,* —— U.S. ——, 113 S.Ct. 1233, 122 L.Ed.2d 640 (1993). In that case, plaintiffs were represented by salaried attorneys from civil rights organizations, and therefore plaintiffs were not actually paying for the legal services performed. Nevertheless, plaintiffs' counsel were awarded $121,073.00 in attorneys' fees and costs for successfully prosecuting a civil contempt motion. *See, also, Motley v. Yeldell,* 664 F.Supp. 557 (D.D.C.1987) (fees awarded to Neighborhood Legal Services' attorneys who successfully prosecuted contempt on behalf of A.F.D.C. recipients; fee award calculated according to usual § 1988 standards); *Tyler v. United States,* 602 F.Supp. 476 (D.Mo.1984) (fees for contempt awarded to attorneys who successfully represented indigent prisoners; award calculated according to standards governing § 1988 fee awards).

As plaintiffs point out, the availability of attorneys' fees in a civil contempt proceeding is designed not only to compensate plaintiffs for costs incurred, but also to coerce compliance. *Fleischmann Distilling Corp. v. Maier Brewing,* 386 U.S. 714, 718, 87 S.Ct. 1404, 1407, 18 L.Ed.2d 475 (1967). Defendant has not cited a single case which has limited attorney fee awards in contempt cases, and this Court declines to impose any such limitations. Indeed, the very case cited by defendants, *Vuitton et Fils S.A. v. Carousel Handbags,* 592 F.2d 126, 130 (2d Cir.1979), indi-

cates that sanctions imposed after a finding of civil contempt serve two functions: to coerce future compliance and to remedy past non-compliance. This principle was recently reaffirmed by the Second Circuit in this case. *Pro–Choice Network of Western New York v. Project Rescue Western New York*, 994 F.2d 989 (2d Cir.1993).

Accordingly, plaintiffs are entitled to an award of attorneys' fees based on the value of their services computed in accordance with the standards used for fee awards under 42 U.S.C. 1988 generally.

### B. *The Reasonableness of the Request*

Defendants next argue that the fee applications are unreasonable and inadequately documented. Each of the arguments is addressed in turn below.

The legal standards for determining an appropriate fee award were stated by the Supreme Court in *Missouri v. Jenkins*, 491 U.S. 274, 285, 109 S.Ct. 2463, 2470, 105 L.Ed.2d 229 (1989):

> A reasonable attorney's fee under § 1988 is one calculated on the basis of rates and practices prevailing in the relevant market, *i.e.*, "in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skills, experience, and reputation." [*Blum v. Stenson*, 465 U.S. 886, 896 n. 11, 104 S.Ct. 1541, 1547 n. 11, 79 L.Ed.2d 891 (1984) ], and one that grants the successful civil rights plaintiff a "fully compensatory fee," [*Hensley v. Eckerhart*, 461 U.S. 424, 435, 103 S.Ct. 1933, 1940, 76 L.Ed.2d 40 (1983) ], comparable to what is "traditional with attorneys compensated by a fee-paying client." S.Rep. No. 94–1011, p. 6 (1976).

Reasonable attorneys' fees are properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate. *See, e.g., Blum v. Stenson*, 465 U.S. 886, 897, 104 S.Ct. 1541, 1548, 79 L.Ed.2d 891, 896 (1984); *Tyler v. U.S., supra*, 602 F.Supp. at 479–80.

### 1. Reasonableness of the hours

■ As far as the reasonableness of the hours expended, defendant argues that plaintiff has failed to submit contemporaneous time records. It is true that plaintiffs' initial moving papers on the Walker application merely presented a summary of the hours spent on the contempt incidents occurring November 29, 1990 and December 1, 1990. This is insufficient to support an award of fees. *New York State Association for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir.1983) (the records "should specify, for each attorney, the dates, the hours expended, and the nature of the work done"). Plaintiffs' reply affidavits on the Walker application, however, cured this deficiency by attaching contemporaneous time records maintained by attorneys Findley and Marcus. The time records that have been submitted have been carefully reviewed and are sufficient to evaluate the nature and reasonableness of the time expended, as required in *Lewis v. Coughlin*, 801 F.2d 570, 577 (2d Cir.1986); *United States Football League v. National Football League*, 704 F.Supp. 474, 477 (S.D.N.Y.), *aff'd* 887 F.2d 408 (2d Cir.1989), *cert. denied*, 493 U.S. 1071, 110 S.Ct. 1116, 107 L.Ed.2d 1022 (1990). The claim for Glenn Murray's services, however, is not supported by contemporaneous time records and therefore must be denied.

Defendants challenge the total hours claimed for the various components of work, arguing for example that 55 hours is unreasonable for pretrial preparation in the Walker application, and that 100 hours of post-trial time is unreasonable.

Generally, the hours claimed by Findley on the Walker and Behn/Rainero application do not appear to be unreasonable in light of the nature of the tasks and the success achieved. On the Walker application, Findley's time breaks down as follows:

| | |
|---|---|
| Preparation of papers and pre-trial preparation of witnesses | 28.5 hrs. |
| Conduct of trial: February 6–February 14, 1991 | 41.0 hrs. |
| Post-trial briefing, digesting of transcript and legal research | 58.5 hrs. |
| Reviewing defendant's brief and preparation of reply brief | 18.0 hrs. |
| Oral argument on post-trial motions | 4.5 hrs. |
| | 150.5 hrs. |

**410**

On the Behn/Rainero Goss application, the hours claimed by Findley are as follows:

| | |
|---|---|
| Preparation of charges | 3.0 hrs. |
| Pre-trial preparation | 12.1 hrs. |
| Trial and trial briefing | 46.0 hrs. |
| Post-trial briefing | 38.2 hrs. |
| Post-trial argument | 6.0 hrs. |
| | 105.3 hrs. |

A review of the clerk's file as well as the trial transcripts readily shows the extensive nature of the representation of plaintiffs on these two contempt motions.

Similarly, Marcus' time on the two applications appears to be reasonable. On the Walker motion, Marcus' time breaks down as follows:

| | |
|---|---|
| Investigation of incident and preparation of papers | 14.0 hrs. |
| Pretrial preparation | 13.0 hrs. |
| Trial | 41.0 hrs. |
| Post trial briefs | 30.0 hrs. |
| | 98.0 hrs. |

On the Behn/Rainero Goss application, Marcus' hours are as follows:

| | |
|---|---|
| Investigation of incidents and preparation of papers | 15.0 hrs. |
| Trial preparation | 4.5 hrs. |
| Drafting of briefs | 37.0 hrs. |
| | 56.5 hrs. |

Defendants do not specifically challenge the reasonableness of time claimed or the hourly rate. Accordingly, there is no basis to disallow the applications. As the Third Circuit explained in *Northeast Women's Center v. McMonalge*, 889 F.2d 466, 477 (3d Cir.1989) (citation omitted), *cert. denied*, 494 U.S. 1068, 110 S.Ct. 1788, 108 L.Ed.2d 790 (1990):

> [W]hen a party opposing a fee application has been afforded the opportunity to raise a material fact issue as to the accuracy of representations as to hours spent, or the necessity for their expenditure, and declines to do so, no reason occurs to us for permitting the trial court to disregard the uncontested affidavits filed by a fee applicant.

I have specifically reviewed and am satisfied with the detailed explanation of how the total hours spent were discounted to reflect the fact that plaintiffs were not successful on the contempt charge for the December 8, 1990 incident.

I also find it reasonable for plaintiffs to recover the entire amount of their disbursements on the Walker application. Of the total disbursements claimed ($4,105.10), $4,020 was for the transcript of the contempt proceeding, and $86.10 was for photocopying. Defendants argue that these disbursements should also be discounted by 30%. Plaintiffs respond that they have billed for the entire transcript because there was no witness unique to the December 8 incident, it would be impracticable to isolate those pages of witnesses' testimony that deal only with December 8, and in all likelihood this would increase defendants' liability because they would be responsible for the cost of plaintiffs' counsel's services required to reduce the transcript fee.

I find plaintiffs' position to be reasonable and therefore allow the full disbursement charge.

### 2. The use of two counsel

Defendants challenge the "double billing" for two attorneys, including the trial. I find plaintiffs' use of two counsel at the two contempt proceeding to be reasonable. This was warranted given the number of violations of the court's orders, the complexity of the issues involved, the number of counsel in and out of the case for various defendants, the fact that discovery had not taken place, and in general the vigorous litigation posture adopted by the defendants. *See, e.g., Seigal v. Merrick*, 619 F.2d 160, 164 (2d Cir.1980) (plaintiff's staffing conferences or court appearances with more than one lawyer may be warranted, especially when "confronted with a bevy of hostile lawyers for the multiple parties on the other side"); *McKever v. Vondollen*, 681 F.Supp. 999, 1002–03 (N.D.N.Y. 1988) (compensation for the use of multiple attorneys at trial reasonable); *New York State National Organization for Women v. Terry, supra*, 737 F.Supp. at 1360 (S.D.N.Y. 1990), *aff'd*, 961 F.2d 390 (2d Cir.1992) (same).

### 3. The reasonableness of the hourly rates

Plaintiffs seek hourly rates of $175 for Findley and $150 for Marcus. Defendants challenge the rates requested, but have not stated any reasons for disallowing the requested rates or presented their own marketplace information demonstrating that the claimed rates are too high. A reasonable hourly rate is usually the prevailing marketplace rate "in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson, supra,* 465 U.S. at 896 n. 11, 104 S.Ct. at 1547 n. 11.

Plaintiffs' counsel, in requesting an award based on an hourly rate of $175 for Findley and $150 for Marcus, references data suggesting an hourly range of $175 to $200 per hour for an attorney with Findley's background and litigation experience (Item 243 ¶ 3; Item 253 ¶ 4). Defendants do not dispute this information. However, based on prior market surveys, I find that the hourly rate should be reduced to $150 for Findley and $125 for Marcus. *See Rabideau v. Management Adjustment Bureau,* 805 F.Supp. 1086 (consent) (1992) (finding an average hourly rate for civil litigation by an attorney with ten years experience of $146). In reaching this decision, I have taken into account plaintiffs' counsels' experience and background.

To summarize, the following fee is approved for the Walker contempt motion:

| Attorney | Hours | Rate | Total |
|---|---|---|---|
| Findley | 150.5 | $150 | $22,575.00 |
| Marcus | 98.0 | 125 | 12,250.00 |
| Disbursements | | | 4,106.10 |
| TOTAL | | | $38,931.10 |

The following fee is approved for the contempt motion against Behn and Rainero Goss:

| Attorney | Hours | Rate | Total |
|---|---|---|---|
| Findley | 105.3 | 150 | 15,795.00 |
| Marcus | 56.5 | 125 | 7,062.50 |
| Disbursements | | | 2,042.66 |
| TOTAL | | | $25,260.16 |

### C. *Defendants' Financial Status*

Defendants Walker, Rainero Goss and Behn next argue that plaintiffs' fee application should be denied entirely or at least reduced substantially in light of the defendants' financial status. Citing the Second Circuit's decision in *Feraci v. Hickey–Freeman Co., Inc.,* 607 F.2d 1025, 1028 (2d Cir. 1979), defendants maintain that the court must take the relative wealth of the parties into account in awarding attorneys fees. In response to a request for supplemental information on this issue, defendant Walker filed an affidavit (Item 327) in which she states she is presently unemployed, has no checking or savings account and her husband is a seasonal employee with limited income. Defendant Rainero Goss filed an affidavit (Item 326) in which she describes herself as destitute. She states that both she and her husband are unemployed, have no cash savings and are heavily in debt. As to defendant Behn, counsel points to evidence of her financial status which was obtained at the contempt trial at pages 458–59 and 509–13 (Transcript of testimony given on 1/11/91, Item 103). Counsel claims that Behn's financial circumstances have not changed since the hearing.

I find that the *Feraci* case is inapplicable to the case at hand. *Feraci* involved the fee-shifting provision of Title VII, 42 U.S.C. § 2000–5(k), which allows the court to award attorneys' fees to successful defendants in Title VII actions where the suit is "frivolous, unreasonable, or without foundation." *Christianburg Garment Co. v. EEOC,* 434 U.S. 412, 421, 98 S.Ct. 694, 700, 54 L.Ed.2d 648 (1978). The court in *Feraci* found that the action was frivolous, but reduced the fee substantially to reflect plaintiff's lack of resources. The Second Circuit stated:

> But to acknowledge that a party is eligible for attorneys' fees only begins the inquiry, for the court must then ascertain the proper amount of the award. It should, first of all, reflect a reasonable compensation for work done, tempered by a concern for the difficulty of the case and quality of the advocacy, *Lindy Brothers Builders Inc. v. American Radiator and Standard Sanitory Corporation,* 487 F.2d 161 (3d Cir.1973), modified on other grounds, 540 F.2d 102 (1976). But because fee awards are at bottom an equitable matter, *Hall v. Cole,* 412 U.S. 1, 93 S.Ct.

1943, 36 L.Ed.2d 702 (1973), the court should not hesitate to take the relative wealth of the parties into account.

607 F.2d at 1028 (citations omitted).

Under Title VII, the barriers to shifting fees to successful defendants are quite high. The purpose of shifting the fee is to discourage frivolous litigation. Here, in contrast, where the attorneys fees are for a willful contempt violation, the fee is intended to compensate the party whose rights were violated and to discourage future contempt violations. While ability to pay may be relevant to discourage future violations, it is not relevant to determine the reasonable value of the time spent by the attorneys.

Furthermore, the equitable considerations on which defendants seek to rely militate against reducing a fee award below the reasonable value of the services where the contemnors have acted willfully. *See, Arnold v. Burger King Corp.,* 719 F.2d 63, 68–69 (4th Cir.1983), *cert. denied,* 469 U.S. 826, 105 S.Ct. 108, 83 L.Ed.2d 51 (1984). I have been able to locate no case of willful contempt in which a fee award was reduced because of contemnor's financial condition. Such a result might encourage defendants to choose the least wealthy individuals to violate the court order in the hope that they would escape any serious financial consequences of their conduct.

Because I find that the ability to pay of the defendants is irrelevant to an award of attorneys' fees based on a successful civil contempt motion, it is unnecessary to address plaintiffs' contentions as to the financial status of the defendants. In any event, the district court already took the defendants' financial condition into account in setting the amount of the fine.

## II. PLAINTIFFS APPLICATION FOR ATTORNEYS' FEES AND COSTS AGAINST PAUL SCHENCK, ROBERT SCHENCK AND PROJECT RESCUE WESTERN NEW YORK

Plaintiffs also seek fees for their successful contempt motion against Paul Schenck, Robert Schenck and Project Rescue Western New York. According to plaintiffs' application, Lucinda Findley seeks $9,537.50 for 54.5

hours at the rate of $175.00 per hour, Glenn E. Murray seeks $24,330 for 161.2 hours at the rate of $150.00 per hour, and the total disbursements are $3,441. This produces a grand total in the fee application of $37,308.50.

Judge Arcara, in his order of September 14, 1992, directed defendants to file papers opposing plaintiffs' fee application by November 6, 1992.

Defendants have failed to respond in any way to plaintiff's fee application. On January 19, 1993, William J. Ostrowski, Esq. sent a letter on behalf of Paul and Robert Schenck explaining that he had been unable to comply with the briefing schedule due to illness and requesting "a testimonial hearing at which counsel can relate their professional services and at which the defendants Schenck may also testify relating to their financial condition." He also noted the Supreme Court's decision in *Bray v. Alexandria Women's Health Clinic, supra,* and argued that plaintiffs were not entitled to fees because they no longer had a claim for relief under 42 U.S.C. § 1985(3).

Counsel's general request for a hearing, without substantiation, and without otherwise attacking the fee application, is insufficient to place the issues in dispute. *See Northeast Women's Center v. McMonalge, supra.* Furthermore, regardless of the Supreme Court's decision in *Bray,* the application for fees is appropriate under the caselaw discussing remedies for civil contempt.

Accordingly, the fee application is substantially unopposed and should be granted. However, in light of the discussion above, the hourly rates charged will be reduced to $150.00 per hour for both attorneys Findley and Murray. This results in a total award as follows:

| | |
|---|---|
| Findley—54.5 hrs. × $150/hr. | $ 8,175.00 |
| Murray—161.2 hrs. × $150/hr. | 24,180.00 |
| Disbursements | 3,441.00 |
| | $35,796.00 |

## III. APPLICATION FOR ATTORNEYS' FEES AND COSTS AGAINST PAUL SCHENCK AND DAREN DRZYMALA

Plaintiffs seek $11,886.41 in attorneys' fees and costs for the successful contempt motion

against Paul Schenck and Daren Drzymala. This breaks down as follows:

| | |
|---|---:|
| Lucinda Findley—36.25 hrs. × $175/hr. | $ 6,343.75 |
| Murray—28.2 hrs. × $150/hr. | 4,230.00 |
| Disbursements | 1,312.66 |
| | $11,886.41 |

Judge Arcara ordered defendants Paul Schenck and Daren Drzymala to file papers opposing plaintiffs' fee application by December 16, 1992. No response was submitted.

Accordingly, the motion is unopposed and should be granted. However, as discussed above, the hourly rate claimed will be reduced bringing the total fee award as follows:

| | |
|---|---:|
| Lucinda Findley—36.25 hrs. × $150/hr. | $ 5,437.50 |
| Glenn E. Murray—28.2 hrs. × $150/hr. | 4,230.00 |
| Disbursements | 1,312.66 |
| | $10,980.16 |

### CONCLUSION

For the foregoing reasons, it is recommended that plaintiffs' application for attorneys' fees and costs for their four successful contempt motions against various defendants be granted as follows:

1. Against defendant Walker for the contempts occurring on November 29 and December 1, 1990 in the amount of $38,931.10;

2. Against defendants Behr and Rainero Goss for the contempt occurring on October 20, 1990 in the amount of $25,260.16;

3. Against defendants Paul Schenck, Robert Schenck and Project Rescue of Western New York for the contempt occurring on December 29, 1990 in the amount of $35,796.00; and

4. Against defendants Paul Schenck and Drzymala for the contempt occurring on September 28, 1991 in the amount of $10,980.16.

DATED: Buffalo, New York

September 30, 1993

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED,** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report and Recommendation in accordance with the above statute, Fed.R.Civ.P. 72(b) and Local Rule 30(a)(3).

*Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.* Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); Wesolek, et al. v. Canadair Ltd., et al., 838 F.2d 55 (2d Cir.1988).

The parties are reminded that, pursuant to Rule 30(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." *Failure to comply with the provisions of Rule 30(a)(3), or with the similar provisions of Rule 30(a)(2) (concerning objections to a Magistrate Judge's Decision and Order), may result in the District Court's refusal to consider the objection.*

**SO ORDERED.**

DATED: Buffalo, New York

September 30, 1993